**MORRISON COHEN LLP**
909 Third Avenue
New York, NY 10022
T: 212-735-8600
Joseph T. Moldovan
Gayle Pollack
David J. Kozlowski

*Attorneys for Guild Investment Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **KENWOOD COMMONS, LLC,** | Case No. 22-35169-SHL |
| Debtor. | |

**NOTICE OF APPLICATION BY SECURED PREPETITION LENDER FOR AN ORDER AUTHORIZING IT TO CONTINUE STATE COURT FORECLOSURE ACTION IN ACCORDANCE WITH 11 U.S.C. § 362(d)(3)**

**PLEASE TAKE NOTICE** that a hearing will be held to consider the Application by Guild Investment Group, LLC, the Debtor's secured prepetition lender ("**Lender**" or "**Guild**")[1] by and through its attorneys, Morrison Cohen LLP, for an order: (i) confirming that the automatic stay has terminated pursuant to 11 U.S.C. § 362(d)(3), or alternatively, (ii) for relief from the automatic stay pursuant to 11 U.S.C. §§ 105 and 362(d)(1) to permit Lender to exercise any and all rights and remedies available to it under applicable law, including the right to continue the foreclosure action pending in the Supreme Court of the State of New York, County of Albany, styled *TBG Funding LLC v. Kenwood Commons, LLC, et al.*, Index No. 902353-19,

---

[1] Guild is the successor-in-interest to TBG Funding LLC ("**TBG**").

which was stayed upon the commencement of the above-captioned bankruptcy case, and waiving the fourteen day stay imposed by Bankruptcy Rule 4001(a)(3), and (iii) granting such further and different relief as the Court may deem just and proper ("**Application**").

The hearing will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, New York 10004-1408 ("**Bankruptcy Court**"), on **January 25, 2023 at 10 a.m. ET**, or as soon thereafter as counsel can be heard ("**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion, shall be made in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court and served so as to be actually received by counsel for Lender not later than **January 18, 2023 at 4 p.m. ET**. Only those objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by Lender. Any reply papers shall be filed and served not later than **January 20, 2023**. In accordance with General Order M-543 (General Order M-543 can be found at www.nysb.uscourts.gov, the official website for the Court), dated March 20, 2020, the Hearing will only be conducted via Zoom®. Any parties wishing to participate in the Hearing must register their appearance by 4 p.m. the day before any scheduled Zoom® hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

#11783500 v6 \030556 \0001

Dated: New York, New York
December 28, 2022

**MORRISON COHEN LLP**

By: <u>/s/*Joseph T. Moldovan*</u>
    Joseph T. Moldovan
    Gayle Pollack
    David J. Kozlowski

909 Third Avenue
New York, New York 10022
(212) 735-8600
jmoldovan@morrisoncohen.com
gpollack@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Guild Investment Group, LLC*

**MORRISON COHEN LLP**
909 Third Avenue
New York, NY 10022
T: 212-735-8600
Joseph T. Moldovan
Gayle Pollack
David J. Kozlowski

*Attorneys for Guild Investment Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **KENWOOD COMMONS, LLC,** | Case No. 22-35169-SHL |
| Debtor. | |

**APPLICATION BY SECURED PREPETITION LENDER
FOR AN ORDER AUTHORIZING IT TO CONTINUE STATE COURT
FORECLOSURE ACTION IN ACCORDANCE WITH 11 U.S.C. § 362(d)(3)**

**TO THE HONORABLE SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE:**

Guild Investment Group, LLC ("**Guild**" or "**Lender**"), secured lender and mortgagee of the Debtor, Kenwood Commons, LLC ("**Debtor**" or "**Kenwood**")[2], by and through its attorneys, Morrison Cohen LLP, respectfully submits this application ("**Application**") for the entry of an Order: (i) confirming that the automatic stay has terminated and that Lender is authorized to continue the action pending in the Supreme Court of the State of New York, County of Albany, styled *TBG Funding LLC v. Kenwood Commons, LLC, et al.*, Index No. 902353-19 ("**Foreclosure Action**"); (ii) or alternatively, granting relief from the automatic stay pursuant to 11 U.S.C. §§ 105

---

[2] Guild is the successor-in-interest to TBG Funding LLC ("**TBG**").

and 362(d)(1) to permit Lender to exercise any and all rights and remedies available to it under applicable law and waiving the fourteen day stay imposed by Fed. R. Bankr. P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper. In support of this Application, Guild respectfully states as follows:

**JURISDICTION AND VENUE**

1.	This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 101(51B), and 362(d)(3) of chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("**Rules**").

**PRELIMINARY STATEMENT**

2.	On March 28, 2022 ("**Petition Date**"), Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

3.	On June 13, 2022, this Court entered an order ("**SARE Order**") declaring this case a Single Asset Real Estate Case under section 101(51B) of Bankruptcy Code [Docket. No. 37].

4.	As a result of the SARE Order, to maintain the automatic stay pursuant to section 362(d)(3) of the Bankruptcy Code, Debtor had to either file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time, or begin making monthly interest payments to its secured lender at

#11783500 v6 \030556 \0001

2

the original contract rate. The Bankruptcy Code requires that these actions be made within the later of 90 days from the Petition Date (Sunday, June 26, 2022, tolled to the following Monday, June 27, 2022), or 30 days after the Court determined Debtor was a SARE debtor (July 13, 2022).

5. Debtor did not and has not made any monthly interest payments. Debtor did file a plan [Docket No. 42] and disclosure statement ("**DS**") [Docket No. 43] (together, "**Plan**") on July 13, 2022, just in time to potentially preserve the automatic stay.

6. Since that time, more than five months ago, Debtor has done nothing in this case with respect to this Plan. It has not scheduled a hearing on the disclosure statement. It has not solicited votes for the Plan. It has done absolutely nothing. Moreover, the Plan is patently unconfirmable: the Plan is predicated on Purchase and Sale Agreement ("**PSA**") between the Debtor and Briarcliff Commons LLC ("**Briarcliff**"). There is no such PSA. Briarcliff is an affiliate of Lender. Briarcliff is not now a party to any purchase and sale agreement with the Debtor and was not at the time the Plan was filed a party to any purchase and sale agreement with the Debtor. This Plan is made of the proverbial "whole cloth."

7. Lender is owed approximately $11.5 million today. The County of Albany has filed a secured claim for approximately $4.5 million ("**Albany Claim**"). Based upon the Debtor's Schedules and filed claims, other lien debts total approximately $400,000; there is approximately $52,000 of priority debt; and unsecured creditors are owed approximately $535,000. Even with the fictitious PSA,

the Plan provides no evidence or even plausible argument that Debtor has any ability to finance the distributions that will be due under the Plan. Debtor's Plan is clearly not supported by reasonable assumptions, and is not feasible in accordance with section 1129(a)(11) of the Bankruptcy Code, as section 362(d)(3) requires.

## BACKGROUND[3]

### A. The Property

8. Debtor owns a 74 acre historic site located at 451 Southern Boulevard, Albany, New York that consists of the land and a former Abbey and school (Abbey and school together, "**Abbey**"; collectively with the land, "**Property**"). Debtor acquired the Property in 2017.

9. Before Debtor's purchase, the Property was last transferred in 1852 to the Sisters of the Sacred Heart. They operated the Property as a church, convent, and school until 2015. Debtor acquired the Property with the intention of developing it into a large mixed-use master-planned community in Albany.

10. The Abbey, which occupies approximately eight acres at the Property's center and is now dilapidated and boarded up, was, under Debtor's plans, to become a mixed-use condominium building, housing luxury residential apartments, and commercial condominiums and various amenities. The balance of the Property is approximately 66.65 acres of raw land.

11. Debtor filed a "Master Development Plan" filed with the City of Albany

---

[3] The material in this section is based upon publicly available information and Debtor's Plan.

#11783500 v6 \030556 \0001

4

in 2018, which was never approved or implemented. Debtor received various building permits for renovation of the Abbey, but lacked the capital to renovate the Abbey and implement its development plan. The permits have lapsed. Debtor also has been unable to develop the balance of the land in accordance with the development plan, as it intended.

12. As of the Petition Date, the Property is in the same undeveloped state it was when it was acquired by Debtor five years ago, only more dilapidated and deteriorating daily.

### B. *The Lender's Loan to Debtor*

13. In December 2017, Debtor obtained a one-year, $5 Million loan ("**Loan**") from the Lender's predecessor in interest, TBG. Guild acquired the TBG Loan in 2022.

14. This Loan is collateralized by a first mortgage on the Property. It provided for monthly interest payments, with the principal due on December 20, 2018 ("**Maturity Date**").

### C. *Debtor's Default on the Loan*

15. Debtor did not repay the Loan on the Maturity Date, and the Maturity Date was not extended by the Lender, thus, Debtor defaulted on its payment obligations under the Loan. In addition, Debtor defaulted on the Loan by granting a subordinate lien on the Property in favor of US Fire Insurance. This was prohibited by the Loan documents without Lender's consent, which was neither requested nor obtained.

16. As a result of these defaults, Lender commenced an action to foreclose the mortgage on April 23, 2019 ("**Foreclosure Action**").

17. On July 28, 2021, a decision was rendered by the New York State Supreme Court granting Lender's request for relief, ordering the Property to be sold, and appointing a Referee to compute the amount owed to Lender and to sell the Property at a public sale ("**Foreclosure Order**").

18. On August 16, 2021, the Referee issued her report determining that $8,069,037.03 was due to Lender as of June 30, 2021, plus per diem interest for every day thereafter.

19. By order entered on January 11, 2022, the New York State Supreme Court confirmed the Referee's report and in addition to the $8,069,037.03 the Referee determined was due to Lender, awarded Lender its costs, attorney's fees, certain other fee and expenses, and interest accruing on all these amounts at the default rate of 24% specified in the Loan documents until the debt to Lender is satisfied.

20. The Referee noticed the sale of the Property for March 30, 2022. Debtor filed this Case on March 28, 2022, thereby staying the sale.

## **EVENTS DURING THE CHAPTER 11 CASE**

21. Debtor filed its voluntary Petition on the Petition Date [Docket No. 1]. Since then, Debtor has been operating as Debtor-in-Possession.

22. On April 11, 2022, Debtor filed its Schedules [Docket No. 12].

23. On April 19, 2022, Debtor filed an application to retain Wayne Greenwald as Debtor's Counsel [Docket No. 17]. The application is pending.

24. On April 26, 2022, Debtor filed a motion to set the Bar Date. The motion was granted and an order entered on July 7, 2022 [Docket No. 39].

25. On June 13, 2022, the SARE Order was entered [Docket No. 37].

26. On July 13, 2022, Debtor filed its Disclosure Statement and Plan [Docket Nos. 42 and 43].

27. Debtor filed its last operating report for the month of September 2022, and is currently in default of its reporting obligations to the U.S. Trustee.

28. Other than engaging in litigation with Lender over whether Lender can pursue its claims against guarantors of the Loan ("**Guarantors**") in state court, which this Court has ruled that it could, Debtor has done nothing of consequence in this Case.

## RELIEF REQUESTED

29. This Court should enter an order that the automatic stay has terminated and that the Lender is authorized to continue the Foreclosure Action.

## ARGUMENT

30. Upon a bankruptcy filing, Bankruptcy Code section 362 automatically stays actions against the debtor or its property. This stay applied to the Foreclosure Action, however, section 362(d)(3) provides that in a SARE case, the stay terminates unless:

> not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments that—

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate . . . .

11 U.S.C. § 362(d)(3).

31. The relevant time period having passed, Debtor's entitlement to the benefit of the stay is dependent on whether it has satisfied section 362(d)(3)(A).[4]

32. Debtor did file a Plan on July 13, 2022, the 30th day after the SARE Order, but this Plan is not even a classic "placeholder" type plan. It is predicated on a complete fiction and has no "reasonable possibility of being confirmed within a reasonable time." *Id*. Debtor has done nothing to prosecute the Plan, has clearly abandoned the Plan, and the Plan is patently not confirmable.

33. This is not a complicated case. There are a small number of creditors and Debtor has only one asset of consequence: the Property.

---

[4] Though Debtor has made no payments to Lender on account of the Loan since the commencement of the Case, section 362(d)(3)(B) is arguably inapplicable because Lender's claim is secured by a judgment lien.

34. Debtor pins its hopes to confirm its Plan on its belief that "there is approximately $80,000,000 equity on the Debtor's assets." Disclosure Statement p.16. In the same paragraph though, Debtor acknowledges "if this case was a liquidation under Chapter 7, that value would be drastically reduced by secured creditors' ability to credit-bid their Secured Claims and the Property being sold in a forced sale." *Id*.

35. Debtor's unsupported assertion of hypothetical equity is at odds with Debtor's stated plans for this Case. In the Plan, Debtor makes clear that it has no intention or expectation of developing the Property. Instead, it states: "Kenwood expects to sell its Property and then cease doing business. If there are net proceeds after Kenwood sells its Real Property, it will determine what to do with the net proceeds after paying Creditors under the Plan." Disclosure Statement, p.15. Apparently, Debtor does not believe there will be any net proceeds. In fact, it is not clear that a sale of the Property in its current condition—a key distinction—will clear Lender's $9.8 million debt as of the Petition Date [Proof of Claim # 19] (and any postpetition accruals) or the Albany Claim of approximately $4.5 million. This is because:

- The Property consists of 74-acres of vacant land except for the Abbey built in the mid-1800s, which likely needs to be demolished.

- The Abbey is in a dilapidated condition and has been sitting exposed to the elements and vandals for years (roof leaking, masonry falling off, structural lumber rotting).

- The City of Albany has already forcibly entered the Property and boarded up windows and doors because it considers the Abbey a public hazard.

- The land is entitled and as-of-right for a variety of uses, but has not gone through any hearings or approval processes to confirm any development plan.

- All previously issued building permits have lapsed because Debtor has done nothing to develop the Property.

- Any potential buyer of the Property would have to massively discount its value because the buyer would also have to take into account that it would have to pay for all horizontal development costs for roads, infrastructure, electricity, gas, subdivision, sewage, pump stations, etc. that are largely unknown and will be an enormous cost.

- On top of this, if a decision were made not to demolish the existing structures on the Property, any potential buyer would have to determine what the costs would be over approximately three years of planning and construction to rehabilitate and develop the Abbey. In addition, the development of the 66 acres of raw land will likely take 10 to 15 years.

- One would also have to factor in that given the current credit markets, there is little likelihood that traditional credit sources would be available, and more than likely any developer would be funding with cash equity which Debtor clearly does not have.

36. Debtor claims that its Plan "is a 100% plan." Disclosure Statement, p.19. It states that the "source of the funds or the procedures to satisfy Claims and Existing Interests are set forth more fully below." *Id*. The problem is, nothing is "set forth more fully below" other than that the "Plan will be funded by the proceeds from the sale of the Kenwood's Real Property." *Id*., p.28.

37. The source of funds identified by the Plan as the "Means for Implementing the Plan," are "the proceeds from and pursuant the PSA." Plan p.18. The "**PSA**" is defined as the "'Purchase and Sale Agreement' dated July , 2022, between the Debtor and Briarcliff for the sale of the Property, as may be amended

between the Debtor and Briarcliff, all as approved by the Sale Approval Order." Plan p.8.

38. The problems with this statement are:

- Briarcliff is an affiliate of the Lender.

- There is no detail provided about this PSA or any copy of the PSA attached to the Plan **because the PSA did not exist at the time the Plan was filed and does not exist today**.[5]

To say that the Plan fails to demonstrate even the remote glimmer of feasibility, would be extremely charitable.

39. As of the Petition date, based upon Debtor's Schedules and filed proofs of claim, Debtor owes its creditors approximately $16 million, the vast majority of which is secured. The Plan does not in any respect adequately address how Debtor is going to satisfy these claims. Debtor filed a document it called a Plan solely in an attempt to satisfy the SARE stay maintenance requirement. Not only was this Plan unconfirmable when filed, five months have since passed with no movement on this Plan. Lender submits, based upon the facts outlined above, that the stay is no longer in effect as a matter of law, and that Lender may simply proceed with the Foreclosure Action. Based upon how certain matters have been handled in this Court relating to Lender's prosecution of its action against the Guarantors, Lender files this

---

[5] Briarcliff and Debtor had engaged in negotiations concerning a potential relationship with Debtor prior to Debtor filing its Plan. Those negotiations did not result in an agreement between the parties and had terminated by Debtor prior to Debtor filing its Plan.

Application for authorization to proceed as it believes the Bankruptcy Code permits it to, and requests that the Court approve the Application.

## IN THE ALTERNATIVE, IF THE AUTOMATIC STAY DOES APPLY TO DEBTOR, THIS COURT SHOULD GRANT LENDER STAY RELIEF TO PROSECUTE THE FORECLOSURE ACTION

40. In the alternative, even if this Court were to rule, notwithstanding the foregoing argument, that Debtor has satisfied the requirements of section 362(d)(3)(B) and that the automatic stay is still operative, this Court should grant Lender relief from the stay to continue the Foreclosure Action and treat this Application as a motion for such relief.

41. Under section 362(d)(1), this Court shall grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). The list of what constitutes "cause" in section 362(d)(1) is not exhaustive. *See*, *In re Éclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000). In the Second Circuit, courts utilize a 12–factor standard in considering whether a party seeking stay relief has established its prima facie showing of cause to evidence that the relief is warranted. *In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990). The factors are:

1) Whether relief would result in a partial or complete resolution of the issue;
2) Lack of any connection with or interference with the bankruptcy case;
3) Whether the other proceeding involves the debtor as a fiduciary;
4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5) Whether the debtor's insurer has assumed full responsibility for defending it;
6) Whether the action primarily involves third parties;
7) Whether litigation in another forum would prejudice the interest of creditors;
8) Whether the judgment claim arising from the other action is subject to equitable subordination;
9) Whether movant's success in the other proceeding would result in a judicial lien avoidance by the debtor;

10) The interests of judicial economy and the expeditious and economical resolution of litigation;
11) Whether the parties are ready for trial in the other proceeding; and
12) Impact of the stay on the parties and the balance of harms.

*In re G.S. Distribution, Inc.*, 331 B.R. 552–67 (Bankr. S.D.N.Y. 2005) (*quoting In re Sonnax Indus., Inc.*, 907 F.2d at 1286). In determining if stay relief is warranted, a Court need not determine that all factors are applicable, nor that each factor carry the same weight. *In re Mazzeo*, 167 F.3d 139, 143 (2d. Cir. 1999); *In re Burger Boys Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994). Instead, "the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

42. Several *Sonnax* factors weigh in favor of vacating the automatic stay to allow the Foreclosure Action to continue. In particular, factors 1, 4, 7, 10, 11, and 12 support stay relief as follows:

> **Factor 1: Whether relief would result in a partial or complete resolution of the issue.** The only meaningful property in this case is the Property. The Property was already subject to a public sale, which as stayed only by the filing of this bankruptcy case. Since the Petition Date, this case has languished in bankruptcy, causing creditors to incur costs, secured claims to accrue interest to the detriment of junior creditors, and all parties to await action by a Debtor who clearly and admittedly cannot obtain sufficient financing to proceed with any plans it had for the Property, and who has instead proposed a patently unconfirmable Plan which anticipates a sale for which the Debtor has laid zero groundwork. This entire case can be resolved by allowing the Foreclosure Action to continue.
>
> **Factor 4: Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action.** The court in which the Foreclosure Action is pending, the New York Supreme Court, County of Albany, has extensive experience adjudicating foreclosure actions on real property and has already ruled on multiple issues in the Foreclosure Action since its inception in April 2019, including granting judgment to the Lender, awarding amounts to Lender, and noticing the Property for sale.

**Factor 7: Whether litigation in another forum would prejudice the interests of other creditors.** Continuing the Foreclosure Action certainly would not prejudice other creditors. In fact, Debtor's only enumerated way out of this case is to sell the Property utilizing a PSA that does not exist. Nor, has Debtor retained a broker, established auction and bidding procedures, attempted to tee-up a sale, or taken any steps at all to sell the Property, and has utterly failed to take any action with respect to its wholly insufficient Plan, creditor interests will be served by a quick and simple foreclosure sale of the Property.

**Factor 10: The interests of judicial economy and the expeditious and economical resolution of litigation.** Judicial economy is well-served by allowing the Foreclosure Action to continue. Debtor filed this case solely to stay the foreclosure sale. Debtor filed its unconfirmable Plan solely as an attempt to retain the automatic stay. Notwithstanding the subsequent five months since the Petition Date, Debtor has done nothing to advance this bankruptcy case or show that it has any ability to reorganize the debtor entity and satisfy its obligations to its creditors. Instead, it has simply said it intends to sell the Property. Clearly, utilizing the mechanism for sale that has already been determined by the New York Supreme Court is expedient and saves significant expense.

**Factor 11: Whether the parties are ready for trial in the other proceeding.** The other proceeding has already adjudicated the issue, and an auction was scheduled to occur before being stayed by this case. This sale can be re-noticed and take place soon after the stay is lifted (or confirmed not to be extant).

**Factor 12: The impact of the stay on the parties and the balance of harms.** The Debtor has had ample opportunity to find an alternative to sale. Despite this time, it has failed to do so. Neither it, nor any other party-in-interest, is harmed by the logical conclusion to this case—a conclusion reached by and shared by Debtor—a sale of the Property.

43. Accordingly, the Sonnax Factors weigh in favor of granting relief from the automatic stay.

## WAIVER OF BANKRUPTCY RULE 4001(A)(3)

44. Pursuant to Bankruptcy Rule 4001(a)(3), an "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed

until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

45. Lender requests waiver of the fourteen-day stay so that it can promptly proceed with the Foreclosure Action that has already been too long delayed.

46. Under the circumstances present here, to the extent the Court grants relief from the automatic stay (instead of declaring the automatic stay terminated), Lender respectfully requests that the Court waive the stay under Bankruptcy Rule 4001(a)(3) such that the order granting such stay relief be immediately enforceable.

### **WAIVER OF MEMORANDUM OF LAW**

47. As the Application does not raise any novel issues of law and the legal authority for the requested relief is set forth herein, Lender respectfully requests that the Court waive any Memorandum of Law requirement contained in Rule 9013–1(a) of the Local Rules of this Court.

### **RESERVATION OF RIGHTS AND NOTICE**

48. Lender expressly reserves its right to amend or supplement this Application, to introduce evidence supporting this Application at the hearing on the Application, and to file additional and supplemental objections as Lender deems advisable.

49. Notice of this Application has been provided to the Office of the United States Trustee, Debtor, Debtor's counsel, the Guarantors, all creditors of Debtor entitled to notice in this Chapter 11 case, and any party that has filed a notice of

appearance pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Lender submits that no other or further notices need be provided.

50. A proposed order is annexed hereto as "**Exhibit A**."

51. No previous application for the relief sought herein has been filed before this Court in this case.

**WHEREFORE**, Lender respectfully requests this Court enter an Order: (i) confirming that the automatic stay is inapplicable to Debtor, (ii) or alternatively, granting relief from the automatic stay pursuant to 11 U.S.C. §§ 105, 361, 362(d)(1), and 362(d)(2) to permit Lender to continue the Foreclosure Action and waiving the fourteen (14) day stay imposed by Bankruptcy Rule 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper.

Dated: New York, New York
December 28, 2022

**MORRISON COHEN LLP**

By: *Joseph T. Moldovan*
Joseph T. Moldovan
Gayle Pollack
David J. Kozlowski

909 Third Avenue
New York, New York 10022
(212) 735-8600
jmoldovan@morrisoncohen.com
gpollack@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Guild Investment Group, LLC*